UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC CHARLES AUMUELLER and
CHRISTOPHER CHARLES AUMUELLER,

       Plaintiffs,                  CIVIL ACTION NO. 07-12584

       v.                             DISTRICT JUDGE JULIAN ABELE COOK

FIFTH THIRD BANCORP,             MAGISTRATE JUDGE VIRGINIA MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiffs began this action by filing *pro se* a vague and ambiguous complaint against "Fifth Third Bancorp et al." Although "et. al." appeared in the caption, it appears that no additional defendants were named. This matter is now before the court on the Bank's motion to dismiss.[1] The court has reviewed the pleadings and carefully considered plaintiffs' oral argument. For the reasons stated on the record and as further explained here, the court recommends that the Motion to Dismiss be granted.

       Following permission to proceed *in forma pauperis*, the court ordered plaintiffs to file an amended complaint by February 11, 2008. Instead, plaintiffs filed, on February 11, 2008, a "Definite Statement of Pleading as Ordered for this Date." Plaintiffs appear to allege that actions

---

[1] Various motions of plaintiffs (D/E 13, 14, 15, 17) are addressed in separate orders. Plaintiffs have also filed two Motions for Temporary Injunction (February 11, 2008 (D/E 22) and February 25, 2008 (D/E 26)) which are pending before the district judge.

by Fifth Third Bank caused them to be evicted from their residence, caused loss and delay of their disability payments, and that the Bank shared false information. The claims that they make are virtually indecipherable and do not appear to have a sustainable legal basis. For example, plaintiffs filed a document in October, 2007, entitled "Submission of Response to Discussion." This document begins as follows:

> Fifth Third Bancorp, being the corporate headquarters of Fifth Third Banks across the nation and associated with two Fifth Third Bank locations, that practiced and caused both Universal Default and total and severe ***infringement*** upon the *Housing Papers and Effects* of the plaintiffs starting in May of 2006 and sued by the plaintiffs within two years, ask for summary judgment against Fifth Third Bancorp, their bank(s) and employees. [Bold and italics as set forth in the original.]

It continues with allegations that the actions of the Bank involve the Internal Revenue Service and are criminal, as well as civil. Plaintiffs seek attorneys fees,[2] five million dollars, and "proper disclosure" to plaintiffs.

Plaintiffs reside in the Western District of Michigan, in Holland, Michigan. It appears that plaintiffs had checking accounts at a branch of Fifth Third Bank in Jennison, Michigan.[3] At least in May and June, 2006, plaintiffs' accounts had overdrafts. When the overdrafts were not remedied, the accounts were closed by the Bank. Plaintiffs allege that the Bank reported such information to credit agencies. Plaintiffs further allege that Chexsystems, QDI Management, and/or Sheakley Uniservice are entities allied with the Bank. These entities committed misdeeds

---

[2]No attorney has appeared in this case.

[3]Thus, venue at first glance would be improper.

which caused plaintiffs to suffer a "universal default" on earned wages and state unemployment benefits. (D/E 23, par. 17, 18) Plaintiffs allege that as a result of the Bank's actions, they are banned from ever having a checking account. They further claim that they are disabled, and thus, they are entitled to reasonable accommodation and relief from their "thieved" wages. Plaintiffs also allege extortion by the Michigan Attorney General and that they have been blacklisted by agencies which affects their ability to obtain housing, papers and effects. They refer generally to various statutes such as 28 U.S.C. § 636(B)(1)(A), Section 804 42 U.S.C. § 3604, and 5 U.S.C.[4]

It must be recognized that where a plaintiff is pro se, courts hold that such complaints are to be liberally construed and not to be held to the same stringent standard as formal pleadings drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595 (1972). These complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 10 (1980). Courts are reluctant to dismiss on procedural grounds alone. However, it is not the role of the court to guess the nature of the claim(s) asserted. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989). Nuclear Transportation & Storage, Inc. v. United States, 890 F.2d 1348 (6th Cir. 1989); Chapman v. City of Detroit, 808 F.2d 459 (6th Cir. 1986). Further, the court is required to dismiss any *in forma pauperis* case, pursuant to 28 U.S.C. § 1915(e)(2), if the complaint is frivolous, malicious, fails

---

[4]Plaintiffs have also filed two Motions for Temporary Injunction (one on February 11, 2008 and one on February 25, 2008) which are pending before the district judge.

to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999).

Plaintiffs' complaint and requested relief are frivolous.  The complaint is not well grounded in fact or law and fails to meet the standard of Rule 11.  Rule 11(b), as amended, provides as follows:

> **(b) Representations to Court.**  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

In 1993, the Supreme Court approved sweeping changes to Rule 11.  The rule is to "govern all proceedings in civil cases thereafter commenced and insofar as is just and practicable all proceedings in civil cases then pending."  146 F.R.D. 404 (1993).  The revised rule provides

that a sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 11(c)(2). The Committee Notes elaborate on the variety of non-monetary sanctions available for a Rule 11 violation. Indeed, the Committee Notes state that only "under unusual circumstances" will monetary sanctions payable to the opposing party be an effective deterrent. Any monetary sanction payable to the opposing party should be commensurate with the fees "directly and unavoidably" caused by the violation. The rule is designed to promote deterrence rather than compensation.

Here, plaintiffs cite several statutes but have not articulated clear claims under any of them. They mention in passing the Fair Credit Report Act, but they fail to allege any facts which would support violation of such statute. Plaintiffs claim a constitutional violation based on police officer conduct. They state that their State of Michigan license plate which designated them as "disabled" was run by a police officer in Holland, Michigan, on February 8, 2008. They had paid for the plate but the Secretary of State used false information to indicate otherwise and is blacklisting plaintiff. The police officer told plaintiff that the address on the license was a drug "hotspot." (Additions to Sealed Testimony, 2/8/08) These allegations have nothing to do with the Bank.

In an attempt to clarify the complaint, Eric Aumueller submitted a letter dated Wednesday, March 26, 2008[5] which is filed this date.[6] In it, Mr. Aumueller indicates that the

---

[5]March 26, 2008 was the date the court heard oral argument.

[6]The court filed the letter treating it as an affidavit, but it declines to file the series of internet pages from Wikipedia, checkfraud.org and other websites attached to the letter.

Bank did not honor "stop payment orders" on three checks written on the account in May, 2006. He also claims that with respect to Christopher's account, duplicate utility payments were debited. He states that the fees charged were 39 percent of his direct deposited disability checks and 88 percent of his next month's disability annuity. If the Bank had not charged these excessive overdraft fees, there would not have been an overdraft and his rent check would have cleared. Because the rent check bounced, he was evicted.

At oral argument, the court asked the Bank to review the Aumuellers' bank records, including any correspondence, and submitted responsive documents for *in camera* review. The court has reviewed these and they show that on or about May 15, 2006, plaintiff Eric Aumueller was sent the Bank's standard 15 day overdraft letter, advising him (its customer) that there is an overdraft which must be remedied immediately or the account will be closed. On May 30, 2006, Eric's account was closed as he had failed to remedy the overdraft. On or about July 7, 2006, a similar letter was sent to Christopher Aumueller. That account was closed August 1, 2006, for the same reason. The documents further show that the Aumuellers had direct deposits of government benefits, but that the other transactions were essentially debit card purchases, loans from third parties, and ATM withdrawals for which "stop payment" requests would not be effective. There are overdraft fees, some of which were reversed, but essentially the Aumuellers demonstrated a consistent pattern of overdrafts, with withdrawals routinely exceeding deposits. The Aumuellers have failed to make any factual or legal showing that the Bank violated any of their Constitutional rights or illegally discriminated against them. The argument that their alleged disability gives them the right to "reasonable accommodation" in the context of financial

transactions – i.e., that they should not be subject to overcharges or other bank fees – is utterly without merit.

It should be noted that this is not the only case that the Aumuellers have pursued. Indeed, in the Western District of Michigan, they sued the Ottawa County 58th District Court, alleging violations of the Americans with Disabilities Act because they were evicted for nonpayment of rent in Case No. 1:07-CV-1171. Judge Quist dismissed that case, finding it without merit. In the opinion, Judge Quist noted that plaintiffs were challenging a previous state court order of eviction and dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2), applying the *Rooker-Feldman* doctrine. (D/E 28-5, Ex. 3) In addition, Eric Aumueller filed bankruptcy in the Western District and received a discharge in May, 2006, Case No. 05-21642-JRH. From the magistrate judge's review of that file, it appears that Eric, although he had at the time a checking account at Fifth Third Bank, did not identify any assets being located at Fifth Third Bank.

For the reasons discussed above, it is recommended that the complaint be dismissed with prejudice and that the court certify that any appeal would not be taken in good faith.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

<u>s/Virginia M. Morgan</u><br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated:  May 19, 2008

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiffs via the Court's ECF System and/or U. S. Mail on May 19, 2008.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan